The question at issue in this case is whether the petitioner's conviction under Section 3307 of the Maryland Criminal Code qualifies as sexual abuse of a minor under the Immigration and Nationality Act. We argued in our briefs that Section 3307 is not divisible and that the Board therefore should not have applied the modified categorical approach. This Court rejected that argument, however, in its decision United States v. Alfaro. So today I would like to focus on the ultimate question of whether subsection A3 of the statute qualifies as sexual abuse of a minor under the categorical approach. We contend that it does not for three reasons. First, subsection A3 does not require perpetrators to act for a purpose associated with sexual gratification, as is required under the definition of sexual abuse of a minor in this Court's 2008 decision in Diaz v. Abar. Second, even in cases in which perpetrators do act for a purpose associated with sexual gratification, subsection A3 applies to consensual conduct that cannot reasonably be described as abusive. And third, subsection A3 is a strict liability offense that allows defendants to be convicted even if they had reason to believe that the victim was an adult. With respect to our first argument, this Court held in Diaz v. Abar that sexual abuse of a minor is an intent-centered phrase that requires perpetrators to act, quote, for a purpose associated with sexual gratification. By contrast, subsection A3 does not require perpetrators to act for a purpose associated with sexual gratification. Although the statute requires defendants to engage in, quote, sexual contact, that term is separately defined under Maryland law to require perpetrators to act either for sexual arousal or gratification or for the abuse of either party. Maryland Court of Special Appeals has further held that the term abuse includes physical, mental, or emotional abuse as distinct from sexual abuse. The statute could thus be applied to a parent who spanks a child on the buttocks for purposes of imposing pain. Now, while such behavior may constitute the physical abuse of a minor, it does not constitute the sexual abuse of a minor. Now, neither the immigration judge nor the board disputed that subsection A3 does not contain a sexual gratification requirement. Instead, they found that they were not required to follow the definition of sexual abuse of a minor set forth in Diaz v. Abar because that case arose under the sentencing guidelines rather than the INA. That logic is flawed for a number of reasons. To begin with, yes? Let me go back. You said we're allowed to look at the, this is divisible under our recent case of Abarro. And so we can look at what portion of the statute violates the Diaz Abarro by looking at the Shepard documents. And the Shepard documents does show that there was sexual conduct for a personal gratification. Well, the Supreme Court has made it clear in DeCant and more recently in Mathis that the only purpose of the modified categorical approach is to determine the underlying offense to which the defendant or, in this case, the respondent, pleaded guilty. So in this case, it is. Divisible, we are going to take that definition and insert it into A3, which says engage in sexual contact, contact consisting of A or B with another if the defendant, victim is under the age of 14 and the person performing the sexual contact is at least four years older than the victim. And so the question is, you have, under Alfaro, we have a couple of different ways or maybe more than a couple of different ways it can be violated. And if we accept the divisibility, that's a dicey question always, but that has been determined. If we accept the divisibility, then we're allowed to look at the charging document. And the charging document shows this detailed sexual conduct with this five-year-old youth. You can only look at the Shepard documents to determine the offense of conviction, in this case, subsection A3. And that's it. And then the question becomes whether subsection A3 is sexual abuse of a minor under the categorical approach. Now, if your honor is asking whether the definition of sexual contact is itself divisible, it is not. The board didn't find that. Why not? It's because it's inserted into A3, and it seems to me, it is part of A3, sexual contact or sexual or physical abuse with another victim that's under the age of 14. In other words, you don't exclude the definition from the charge itself. I don't think, I think at that point, we can look at which statute then fits the diaz- faro is the one involving the intentional touching of the potential touching of the victims or actors, genital, anal, or other intimate area for sexual or vascular gratification. And that's included in one of the divisible crimes. And that happens to be, that happens to be the crime that fits the diaz-faro. Your honor, I do not dispute that you have to look to the definition of sexual contact. However, it is undisputed in this case that the definition of sexual contact is not itself divisible. So the phrase in the definition, for arousal or sexual, for sexual arousal or gratification, or for the abuse of either party. So it's either or. That does not make it divisible. This court has repeatedly held- Al-faro, you said it was. No, what the court said in al-faro is that it's divisible between the subsections. So subsection A1 is a different crime from subsection A2, is a different crime from subsection A3, A4, and A5. It did not hold that the statute was further divisible. Subsection A3 wasn't even at issue in al-faro. That case involved subsection A1. But it is undisputed between the parties that subsection A3 is not further divisible, that the definition of sexual contact is not divisible. The board did not hold that. And of course, this court is bound by the Chenery Doctrine. It cannot affirm the board on an alternative ground. So we know, we're entitled to use a modified category approach in this case. And we know from the Shepard documents that this man sexually abused a five-year-old girl for personal gratification in a very offensive way. And that that does not involve a sexual abuse crime. That's the argument. The Supreme Court has repeatedly made clear that the modified categorical approach serves a limited function. It is not to shoehorn the facts into the ultimate categorical inquiry. It's to find out what that person was actually convicted of, necessarily convicted of. The elements to which they necessarily plead guilty. In this case, the elements that the man was necessarily convicted of, he was engaged in sexual conduct involving the touching of an intimate area for sexual gratification with respect to a victim under 14. And he was at least four years old. All he necessarily pleaded guilty to was engaging in sexual contact. And sexual contact. He pled guilty to all the facts that were incorporated into the charging document. But under the categorical approach, the facts are irrelevant. All that matters, as Supreme Court has said. I understand, but it describes the Criming Committee. And the Criming Committee was one for gratification. But it doesn't matter because the definition of sexual contact also includes acting for purposes of abuse. And that definition is not itself divisible. That argument has not been raised by the government at any point in this case, Your Honor. With respect to the definition of sexual abuse of a minor, I was speaking about why the definition in De Isabara must apply in immigration cases. The first reason is that sexual abuse of a minor is a generic offense. And a generic offense must, by its nature, be subject to only a single generic definition. To say that a generic offense means something different in the immigration context than it means in the sentencing context would undermine the entire basis of the categorical approach. If the board is not required to follow this court's definition of sexual abuse of a minor, nor, presumably, would it be required to follow the Supreme Court's generic definition of burglary, it could instead define—the board could define burglary as including shoplifting or breaking into a vehicle, which courts have repeatedly held do not qualify as sexual—do not qualify as burglary. Pardon me. And, of course, in Taylor, it was a motor—dwelling motor vehicle or a boat. Correct. All disjunctive. And the court said, in the modified category approach, you could determine whether it was dwelling and, therefore, category. The court said, assuming those were alternative elements. Here, sexual contact does not consist of alternative elements. If you look at the jury instructions— This is the same order. The jurors are not required to determine whether a defendant accused of this crime acted for purposes of sexual arousal or gratification. In Taylor, they weren't either. Taylor, there was only the disjunctive, and you could have violated with any three, and the judge could have said, if they violated any three, find the defendant guilty. Your Honor, I have to plead exhaustion on this issue. The Supreme Court has said in DeCamp and Mathis, and they can't be more clear, that the limited focus—purpose of the modified categorical approach is to determine the elements of the offense of conviction. The element in this case is sexual contact. That's it. Sexual contact, the defendant can act for purposes of sexual arousal or gratification or for the abuse of either party. But a jury need not unanimously decide which was either, which one they acted for purposes of. Therefore, the definition of sexual contact is overbroad rather than divisible. And the modified categorical approach, regardless of what it says in the indictment, cannot be used to smuggle the facts in, so to speak. Returning to my argument about Diaz-Ibarra, the definition of sexual abuse of a minor adopted in that case was taken verbatim from the 11th Circuit's decision in Padilla-Reyes. And the question in that case was whether the defendant had been convicted of sexual abuse of a minor under the INA. So in our view, it would be odd for this Court to adopt a definition of sexual abuse of a minor from another circuit in a case involving the INA but not apply that definition to its own cases involving the INA. Now, finally, applying a different definition of sexual abuse of a minor in immigration cases would create an anomaly under the sentencing guidelines. Under Guideline 2L1.2, defendants who were found guilty of illegally reentering the country can be subject to a 16-level enhancement if they were previously convicted of a crime of violence or an 8-level enhancement if they were previously convicted of an aggravated felony. Now, the phrase sexual abuse of a minor appears in both places. So under the Board's logic, a sentencing judge who found that a crime was not sexual abuse of a minor for purposes of the 16-level enhancement would then have to apply a different test to determine whether it qualified as sexual abuse of a minor under the 8-level enhancement. This Court rejected that approach in Rangel-Castaneda, and we are aware of no court that applies different definitions of sexual abuse of a minor depending on whether the case arises under the sentencing guidelines or the INA. Now, the only reason that the Board provided for not following Diaz-Ibarra is that this Court did not cite Diaz-Ibarra in its more recent decision in Amos v. Lynch. However, as we explained in our brief, the actual holding of Amos was that the criminal statute in question did not qualify as sexual abuse of a minor even under the Board's more expansive definition. So the panel that decided Amos had no need to reach whether the Board was required to follow Diaz-Ibarra or, at most, was acting under an unwritten assumption that Diaz-Ibarra did not apply. But either way, nothing in Amos precludes this panel from holding that the Board should have applied the definition of sexual abuse of a minor set forth in Diaz-Ibarra. Our second argument why Subsection A3 does not qualify as sexual abuse of a minor is that even when perpetrators do act for a purpose associated with sexual gratification, the statute encompasses consensual conduct that cannot reasonably be described as abusive. In other words, just as the statute applies to conduct that is abusive but not sexual, so does it apply to conduct that is sexual but not abusive. Under the plain text of the statute and decisions of Maryland appellate courts, the statute would apply to a 17-year-old who briefly touches the buttocks of a 13-year-old, even if the victim consented to the touching and even if the touching occurred through the victim's clothing. This type of conduct does not require the use or exposure of sexual organs. It cannot lead to pregnancy or the spread of sexually transmitted diseases. And it is perfectly legal in a dozen states and under recently proposed amendments to the Model Penal Code. May I ask you a question about this argument? So this is basically the argument that was addressed by the BIA. They said we're applying, I'm forgetting the cases, but Esquivel-Quintana and we think close enough. There's a bigger age differential, the victim's younger, the crime is less egregious, but we think when you add it all up, this counts as abuse, categorically. Do we owe any deference to that judgment? No, you do not. And why not? May I respond? Yes, okay. For the same reason that this court did not owe deference in Amos, Chevron deference, because matter of Esquivel-Quintana, just like matter of Rodriguez-Rodriguez, does not actually supply a definition of sexual abuse of a minor. The board literally says, we are going to apply a definition or create a definition on a case-by-case basis. So the matter of Esquivel-Quintana. Therefore, at most, the board is entitled to skid more deference in this case. Yes. May it please the court, Karen Melnick for the United States. The Maryland statute issue in this case is a sexual abuse of a minor offense. The board here properly looked to its precedent decisions and reasonably concluded that sexual contact with a minor in an intimate area under the age of 14, where the age disparity between the victim and the perpetrator is at least four years, falls within the parameters of the sexual abuse of a minor offense. Whether the board relies on its precedent decisions, which is the proper course here, the board relied on Rodriguez-Rodriguez through Esquivel-Quintana. And in Rodriguez-Rodriguez, where this court actually gave Chevron deference in Amos to two aspects of Esquivel, and that is that the generic federal definition does not require as an element physical contact. And in this case, it's arguably worse under this statute because it does require physical contact. This is not an offense that's done in the presence of a child, but done to a child. This court in Amos also gave Chevron deference to the fact that the board held that indecency with a child by exposure equals a sexual abuse of a minor offense. Again, this is not by exposure. This is contact. This is arguably worse. But you have more than that. You have a decision in Esquivel-Quintana which gives you more generic guideposts or parameters, if you will. And in that case, which the Sixth Circuit gave Chevron deference to, it found that an unlawful intercourse with a minor under the age of 18, where there's a three-year age deferential, is a sexual abuse of a minor offense. Now arguably, this is not unlawful intercourse. Perhaps it's not as serious. However, as Esquivel pointed out, the age gap between the perpetrator and the victim is key. We're not talking about playful contact on the school ground, and we're not talking about a playful touch on the buttocks, as counsel suggests. Under Maryland law, we're talking about, with respect to sexual contact which equals abuse, sexually oriented touching committed for the purpose of inflicting harm on another, physical or otherwise. So within these parameters, the only question for this court is whether the board properly followed what it's charged to do, and then whether or not its analysis is reasonable. And under that process, it most certainly did. You have a statute here that requires the actual physical contact, again, not something done in the presence of. You have a younger child than what we're talking about in Esquivel-Quintana. We're talking about a child under 14. And we also have a larger age disparity, not just three years, but four. And what do we do with Diaz-Ibarra? Why doesn't that cover this case? It would be in contravention of Amos and the board decisions to import that definition into this situation. Amos says the BIA has not put forth the generic definition, and certainly, and I know that was before Esquivel-Quintana was decided, but that case even more clearly says, no, we're going case by case. We're not offering up a definition. In light of that, why don't we look to the Fourth Circuit's generic definition? Well, this panel's, this court is in the same position, really, as Amos. Amos didn't, if you notice, Amos didn't say, okay, the board did not present a generic definition, but we have one right here in our own circuit. We have Ibarra. So we're just going to use that. They didn't have to go that far. They said the BIA just messed this up. The reasoning doesn't work. They didn't even have to go that far, but we're sort of in this position. I mean, I guess I just don't see why we're not bound by Diaz-Ibarra. Well, whatever we may think of it, there it is. There is a generic definition. The BIA hasn't offered an alternative generic definition. Well, our argument is, well, it's twofold. One, that those, the case Ibarra and the other case Padillas, they are sentencing guideline cases, and that the sentencing guideline, the sentencing commission, that's not Congress. The intent is to be found from congressional intent. And that's what the board explored and discussed in Rodriguez-Rodriguez. And there it found that the definition for sexual abuse of a minor, that category of cases should be broad. There are 50 states that define sexual, unfortunately, sexual crimes against children in so many different ways that this is a definition or a guideline, a category of cases, of statutes that needs to be broad. You have crimes of violence, you have rape, and you have sexual abuse of a minor, which came out of ERIRA. And it's an INA concept. Which is now, but it's imported into one enhancement under the sentencing guidelines. So under your theory, sexual abuse of a minor would mean two different things, depending on which guidelines enhancement you have. Because that does seem difficult. Difficult as it may be. That's right. Yeah. I mean, this is our first, what the government's primary argument is that Diaz-Ibarra just is not applicable here in the INA. If the court is inclined to import that definition, it, the statute's still sexual abuse of a minor offense. It doesn't really, it doesn't matter if the court adopts the board's reasoning here, which is reasonable, or adopts Diaz-Ibarra. Because if you recall, the statute in Diaz-Ibarra was one that was done, prohibited conduct done in the presence of the child. So here you have, again, contact with the child. Contact. And how does the state define contact? The contact defined under the statute is an intentional touching of the victim's genital, anal, or other intimate area. This is under the statute for the purpose of sexual gratification or for the abuse of either party. And so, would counsel- What about the next phrase? I'm sorry, what? The next phrase. You just read part of the definition. Yeah, keep reading. There's a disjunctive. The sexual arousal or the abuse of either party, is that? No, the next phrase, the next phrase is, or for the abuse of either party. Right, I thought I just, I thought I said for the abuse of either party. Or for the abuse, right? Or for the abuse, yes. All right, so in that disjunctive, how then does it define abuse? The, Berylyn defines abuse, it isn't just- No, no, no, no, don't give me commentary. Just how do they define it? It's sexually oriented touching committed for the purpose of inflicting harm on another physical or otherwise. So in this case, counsel would have- That's how abuse is defined? The statute underlap and that's how it's defined. And Berylyn defines abuse in that way. For purposes of this statute? Yes. So if counsel would have- Read that again if you would. From the case. That requires sexually oriented touching committed for the purpose of inflicting harm on another physical or otherwise. So under Diaz-Ibarra, if you choose to use that definition, again, the government suggested that's an extremely narrow definition for the context that we're in. That counsel would have you conclude that sexual abuse of a minor with the intent to abuse, I mean, this is not abuse. Can I just ask you a very quick question? I'm not trying to play gotcha. Oh, no, no. Is this definition of abuse, is that somewhere in your brief just so I can look it up? I mean, I know I slight lap in, so. This is actually the easier case because in Diaz-Ibarra, this court already decided that the intent to gratify equals abuse. So if you have intent to gratify, which this statute has, plus you have the intent to abuse, it would have the absurd result that an intent to abuse is not sexual abuse of a minor, which we would argue makes no sense at all. I can't find this case, but I did have a question. So one of your arguments is that we should apply Diaz-Ibarra kind of limited to its facts. This was a case without touching, and so we just construe it in line with its facts. And I think that was a strong argument until we decided Alfaro, which really doubles down on this definition, right, says, no, this is really necessary to the definition of sexual abuse of a minor, that you have that sexual gratification component because that's what polices the boundaries and makes sure you're not reaching all kinds of things that are really just regular assault. And so after Alfaro, it seems to me it is harder to make the argument, but maybe you have a way around Alfaro. Well, again, Alfaro was a, it was not deciding whether or not this particular statute is sexual, but it was deciding, the only issue before the court in Alfaro was whether or not a, the statute under a different subsection was a forcible sex offense, a crime of violence under the sentencing guidelines. And the court wasn't the least bit concerned with the definition of sexual abuse of a minor under the INA. It was looking to see whether or not the defendant's argument, Mr. Alfaro, whether or not, oh, well, this is not a forcible sex offense. I didn't have the intent to gratify it, so the court looked at its decision in Diaz y Barra, again, another sentencing guideline case, and said, oh, well, under, for sexual, under, this is different from a sexual abuse of a minor case. Here's a case that our present held that that's the situation where intent to gratify is necessary. But we're not looking at that here. We're looking at a forcible sex offense. I mean, in other words, Your Honor, it really wasn't deciding this issue. I understand what you're saying. Now, in your stay application, or in your stay briefing, in this case, though, you argued that Diaz y Barra did govern, that we should apply that case. We're bound by unpublished opinions that apply it under the INA, and that is the standard. I'm sorry. Was this in a, in a... The stay, the brief on the stay application in this case? Oh, a stay, yeah. Your Honor, you know, obviously, these are very complicated issues. I believe that... You just changed your mind. That's fine. Well, the stay, I think, was, you know, had to be answered within a few days. And yes, we... Our primary argument is that the issue here is whether or not the Board, in this case, acted reasonably in determining that this statute falls within the parameters of sexual abuse of a minor offense. And we would say that clearly it does. It is the Attorney General... Let me ask you, in that question, that narrow question, would we have to include the fact that the Board follows the categorical approach? Well, the Board, you know, with respect to that, I kind of agree with counsel here. I think Alfaro found that the statute writ large is divisible, so that you then can... No, no. I'm talking about the reasonableness of the Board's decision. We have to, in that, we have to assume that the Board is applying a categorical approach, right? Well, categorical as to the subsection of... No, a categorical approach defined by the Supreme Court. Basically, looking at the elements of conviction and the fact of conviction. Right. I would agree. Okay. So, once we get into that analysis and determining whether the Board is reasonable, then don't we have to take the steps for looking for the elements and deciding, number one, is it divisible? Number two, if it's divisible, what is the crime that fits the Board's view of this? And in that regard, just to skip a few steps, is the Board concluding that the disjunctive, in other words, if the offense was defined by the abuse of either party, the contact is for the abuse of either party? That that's a sexual abuse of a minor offense. Yeah, I mean, the Board, if I understand Your Honor's question, the Board didn't even feel the need here in light of the other elements of the offense to even... It didn't address the intent argument. It didn't get into whether or not those are divisible or... So, the Board's position is the sexual abuse of a minor defined by either disjunctive here includes the abuse of either party as an element. That's correct. And that... So, then you have to be assuming that sexual gratification is not an element of that. Well, I don't think the Board was making a distinction. I don't think the Board even discussed the intent to abuse or the intent to gratify or any distinction between them. I think  the Board has to be taking the position, I gather, that for the abuse of the either party, if you engage in that contact with the persons defined for the abuse of either party, then if somebody whips a child excessively on the butt, that's one of the intimate parts that's defined, that would be sexual abuse of a minor. Yes? Can I just bring you back? When you started, you were saying that you actually agree with your opposing counsel on something, and I'm always happy when I hear it might narrow. What is it that you agree? Oh, well, I just agree that Alfaro found that the statute writ large, all the bigger subsections, correct, were divisible. So, you're not advancing the argument that we can consider that there are two entirely separate crimes under this scheme. One is sexual contact for sexual gratification, and one is sexual contact for abuse, that those are separate crimes, separate. Well, I don't think the, you know, I don't want to off-smile like Chenery, and so the Board did not make that distinction in this case, so I will not make that distinction. In closing, I'd just like to say that, you know, it's, again, it's the Attorney General through the Board of Immigration Appeals who's charged with determining which criminal offenders are removable from this country, and sexual abuse of a minor in this context is an INA concept. Because the statute, the states define and categorize sex crimes against children in many ways, the Board has determined that sexual abuse of a minor is a category of offense that should be defined broadly. And here, under the generic guideposts that are established by the Board precedent decisions, and the ones that, the aspects of Rodriguez-Rodriguez that this Court in Amos gave Chevron deference to, that the Board reasonably determined that this offense is a sexual abuse of a minor offense, and alternatively, even if the Court chooses to decide, that this, too, qualifies as a sexual abuse of a minor offense. I'm so sorry. I know you're wrapping up. I really apologize. No, go ahead. It's okay. Just a very factual question. Was there a point at which the government was arguing that under the modified approach it was obvious, it was necessarily the case, that the petitioner had been convicted under A4? No, that was, whether that was a, I was never arguing, the Court was never, the government was never arguing it. I think in a Board appeal from DHS, they, we would suggest mistakenly, decided A4 as the basis. Yeah, I, that's not something that's... It doesn't seem like it would... Yeah, the immigration judge, the Board, that I just think was, yeah, a mistake. If the Court has no other questions, I'll submit the rest on the brief. I just want to be sure about one thing before you go. Sure. You do agree that we are looking at A3? Correct. And you do agree that it is not further divisible once you find out, once you do your calculation, that it is a divisible statute as a whole, and you look at what may have been the offense and the elements, it's not further divisible, correct? Well, again, the Board didn't... No, I'm asking you. I'm not asking what the Board did. I'm talking about your position. You agree that it's not further divisible, that this becomes the offense that we look at now as to its elements, and as to whether or not it is, how broad it is, in terms of what the least a person can be convicted of. Least culpable conduct. Generically, correct? Correct. So if you look at the whole... And you do agree that it's all based on sexual contact? Correct. In an intimate area. Maryland law would define that in terms of whether or not it... that it would require sexual abuse for purposes of gratification. Sexual... Right? For gratification or for abuse. Yes. Right. And that abuse doesn't have to do anything with sex. You agree with that? Well, it's the sexual... It's the intimate area that makes it sexual. I mean, we're not just talking about a slap on the arm, or a kick in the shins. I mean, we're talking about contact of a harmful nature in an intimate area. Including the buttocks. That's what makes this case a little bit unusual. Yeah, including the buttocks. Well, the buttocks is an intimate area. I mean... But it is also an area that is often struck, not for sexual reasons, at least in the bad old days. Yeah. Wouldn't you agree with that, counsel? That I can't be a witness, because I'm a judge, but I certainly, if I were, I certainly could give some testimony. Well, again, you have... Well... Then you have, where is this statute used in that way? Where are the cases from counsel that says that's what this Maryland state prosecutes cases under this statute for that? And that's what we look for. And there aren't any. That's what federalism is, isn't it? Yeah. Congress sort of allows you to... So you have to... You're wedded to what each state law deals with, right? We're not talking generically whether it's a federal crime, whether or not sexual... I think that's what makes it tough, because looking at this thing, so what he did certainly has abused the child in this instance. But that's what the analysis... The question is, what is the element of offense? Not how it was particularly done in this case. And that's why... No, I understand it's not the facts. It's the... Right. That's what I saw. Again, even under Diaz y Barra, that was the harder question for the court. That was whether or not contact done in the presence of a child with intent to ratify is sexual abuse of a minor. And this court said, yes. And so now you have contact with the child with an intent to abuse. And this is contact in a sexual... It's always sexual because the part of the body touched and buttocks is included in it. That's the only part that's sexual. The rest is for... To abuse. In other words, I want to... I beat my child maybe too hard. I mean, that's what makes it sexual. In that sense, the way to define it here is because the part of the body touched. And the alternative, because... And the alternative. And the alternative, because it's not further divisible. All right, that's... You didn't raise my theory below. Thank you, counsel. Thank you, your honors. All right. Chief Judge Gregory, you asked how the term abuse was defined. It's not defined by statute. But in Lapin v. State, a 2009 decision, the Maryland Court of Special Appeals said, quote, We hold that in light of the plain language of the statute and the legislative history, a touching for the purpose of abuse refers to a wrongful touching, a touching of another person's intimate area for a purpose that is harmful, injurious, or offensive. Now, in light of that definition, I think it is quite clear that Maryland could prosecute someone for spanking a child on the buttocks or whipping a child on the buttocks. I'm not sure about that. What was the... It said a wrongful touching. And a spanking may not be a wrongful touching. Well, what's the definition there again? A wrongful touching. Wrongful. That word wrongful. Would a spanking be a wrongful touching? I would think so. A whipping certainly would be a wrongful touching. You would? I got whipped a lot of times. I guess I was abused all through my childhood. Well, I think in this day and age, we might say that Your Honor was a victim of physical abuse, but I don't think anyone would say that Your Honor was a victim of sexual abuse precisely because, as Chief Gregory noted, and Judge Harris noted, that the buttocks are an area that are often struck for non-sexual purposes. Now, the opposing counsel... Let me ask you.  Your colleague said that Maryland does not prosecute spankings on the buttocks. Is... Have you found any cases where the statute has been enforced in a circumstance that was not sexual as we commonly understand? We have not found a spanking case. However, the realistic probability test can be satisfied, this Court has held repeatedly, by the plain language of the statute in combination with principles espoused by state appellate courts. And presumably because over 95% of all state criminal prosecutions end in unreported plea agreements. So it's quite possible that there are cases in which people have been prosecuted for spanking or ripping on the buttocks, but we're not aware of them. But if a Maryland prosecutor were to bring that charge, I'm not sure what defense a defendant could raise under this expansive language of the term abuse. We would get a Court of Appeals decision that would then give us an inclusive interpretation. Sure, but in the absence of a Court of Appeals determination, this Court has said that you should look to the decisions of intermediate appellate courts. And where is buttocks made an intimate part? The Court of Appeals decision, 2009 decision in Bible v. State. Yes, this Court cited that in Alfaro in footnote one of its decision. Moving back just briefly to Diaz-Ibarra, Judge Harris asked about the stay motion. The government's response to the stay motion was filed eight days after we filed our motion. They were actually given an extension. So I don't think their reliance on Diaz-Ibarra in their response to the stay can be attributed to mere haste. If I could return to the issue of Skidmore deference and why the board's decision. If Diaz-Ibarra applies, I believe we win. But if the court finds that Diaz-Ibarra doesn't apply, I think we win even under Skidmore deference. The board relied on Esquivel-Quintana, in which it held, Esquivel-Quintana held that sexual intercourse with a 20-year-old and a 17-year-old constituted sexual abuse of a minor. And that said, well, this statute constitutes sexual abuse of a minor because it requires a younger victim and a greater age disparity. Well, I think that logic might make sense if this statute required sexual intercourse. But of course, as we know, it does not. It applies to sexual contact, which could apply to the brief and consensual touching of the buttocks through the victim's clothing. I think it goes without saying that the age of the victim and the age disparity is only relevant to whether a crime constitutes sexual abuse if the underlying behavior is sexually abusive. So, for example, if a statute prohibited a person over 18 from holding hands with a person under 10, that would also involve a younger victim and a greater age disparity. But holding hands simply is not sexually abusive. Now, obviously, the conduct at issue in this case is more egregious than holding hands. But at the same time, it is much less egregious than sexual intercourse. So I think the point is that the board's reliance on Esquivel-Quintana was simply inapt. And then our final argument about why the statute doesn't qualify sexual abuse of a minor is that it's a strict liability offense. And defendants can be prosecuted even if they were affirmatively led to believe that the victim was an adult. We would thus ask the court to follow the Tenth Circuit's decision in Rangel-Perez v. Lynch, which held that Utah's statutory rape offense did not qualify as sexual abuse of a minor precisely because it was a strict liability offense. That case was decided after the briefs were submitted, but we did submit a 28-J letter that was filed on March 8. Finally, we would just ask that if the court does intend to rule in petitioner's favor, we would note that he has been subject to mandatory immigration detention for nearly two years. So if the court does conclude that he is not subject to the charge of deportability, we would respectfully ask that it issue an interim order that he be released from custody pending the issuance of a written decision. The court has issued similar orders in other cases when it intends to rule in the favor of an alien who is subject to mandatory immigration detention. If the court has no further questions. Thank you, counsel. We'll come down and brief counsel and then proceed to our last.
judges: Roger L. Gregory, Paul V. Niemeyer, Pamela A. Harris